O

JS - 6

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| REFUGIO CABANILLAS, an individual, | CASE NO. CV 16-1589 CAS (ASx) |
| Plaintiff, | |
| vs. | ORDER GRANTING PLAINTIFF'S MOTION TO REMAND; DENYING DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS AS MOOT |
| SELECT PORTFOLIO SERVICING, INC.; U.S. BANK NATIONAL ASSOCIATION; and DOES 2 through 10, inclusive, | |
| Defendants. | |

On January 7, 2016, Refugio Cabanillas filed this action in Los Angeles Superior Court. Dkt. 1-1. On February 4, 2016, Cabanillas filed a First Amended Complaint ("FAC"), naming as defendants Select Portfolio Servicing, Inc. ("SPS"); U.S. Bank, National Association ("U.S. Bank"); and various fictitious defendants ("defendants"). Dkt. 1-2. Cabanillas' FAC pleads claims for violation of California Civil Code § 2924.10; violation of California Civil Code § 2923.7; negligence; and violation of the California Business and Professions Code § 17200. On March 8, 2016, defendants removed the action, invoking the court's diversity jurisdiction under 28 U.S.C. § 1332.[1] Dkt. 1 ("Notice of Removal").

---

[1]Removal at 1.

On March 17, 2016, Cabanillas filed a motion to remand the action to Los Angeles Superior Court, asserting that the amount-in-controversy requirement has not been satisfied. Dkt. 9 ("Remand Motion").  On March 22, 2016, defendants filed a motion for judgment on the pleadings.  Dkt. 12.

## I.  FACTUAL BACKGROUND

On November 22, 2005, Plaintiff obtained a mortgage loan from First United Home Loans in the original principal sum of $349,000.  The loan was reflected in a promissory note secured by a deed of trust encumbering the property located at 312 S. Vail Avenue, Montebello, California 90640 ("the Property").  FAC, ¶ 10; Exh. A.  On July 2, 2008, an Assignment of Deed of Trust was recorded against the Property, evidencing that the beneficial interest under the Deed of Trust was assigned to U.S. Bank. Dkt. 13, RJN, Exh. 1.[2]  SPS is the current servicer of the Loan.  FAC, ¶¶ 2, 12.

On May 15, 2008, a Notice of Default and Election to Sell Under Deed of Trust was recorded against the property.  RJN, Exh. 2.  On January 27, 2010, a Notice of Rescission of Notice of Default was recorded.  RJN, Exh. 3.

Plaintiff alleges that on or about July 8, 2015, he submitted a complete loan modification application to SPS.  FAC, ¶ 17.  He alleges that several weeks passed, but he never received a written

---

[2]Defendants requests that the court take judicial notice of three documents.  This request is unopposed.  A court can consider evidence in deciding a remand motion, including documents that can be judicially noticed.  See, e.g., Ryti v. State Farm General Ins. Co., No. C 12-01709 JW, 2012 WL 2339718, *1 n. 4 (N.D. Cal. May 30, 2012) (granting plaintiffs' request for judicial notice and considering documents that were proper subjects of judicial notice in deciding a remand motion); Vasquez v. Arvato Digital Services, LLC, No. CV 11-02836 RSWL (AJWx), 2011 WL 2560261, *2 (C.D. Cal. June 27, 2011) (considering  documents that were proper subjects of judicial notice in deciding a remand motion).

"Judicial notice is appropriate for records and 'reports of administrative bodies.'" United States v. 14.02 Acres of Land More or Less in Fresno County, 547 F.3d 943, 955 (9th Cir. 2008) (quoting Interstate Natural Gas Co. v. Southern California Gas Co., 209 F.2d 380, 385 (9th Cir. 1954)).  All three documents defendants wish the court to judicially notice were recorded in the Official Records of Los Angeles County, California; defendants provide the recorded document number for each of the exhibits. The court can therefore take judicial notice of the documents proffered by defendants as public records. See, e.g., Velazquez v. GMAC Mortgage Corp., 605 F.Supp.2d 1049, 1057-58 (C.D. Cal. 2008) (taking judicial notice of documents recorded by the Los Angeles County Recorder's Office, including deeds of trust); Maguca v. Aurora Loan Services, No. SACV 09-1086 JVS (ANx), 2009 U.S. Dist. LEXIS 104251, 2009 WL 3467750, *2 n. 2 (C.D. Cal. Oct. 28, 2009) ("The Court takes judicial notice of the notice of default, as it is a public record").

1    acknowledgement of receipt of the application from defendants, as required under California Civil Code
2    § 2924.10.  Id., ¶ 18.  Plaintiff further alleges that although he requested a Single Point of Contact
3    ("SPOC"), he was never assigned one.  Id., ¶ 25. Finally, he alleges that defendants' loan modification
4    and loss mitigation review processes are fundamentally flawed and purposely lengthy.  Id., ¶ 46.

5         The FAC indicates that the damages Plaintiff seeks amount to no more than $70,000.  Id. at 12.
6     Plaintiff also seeks injunctive relief.  The first and second causes of action, alleging violations of the
7    California Homeowners Bill of Rights ("HBOR"), both state "Plaintiff is entitled to an injunction prior
8    to foreclosure and damages if post foreclosure." Id., ¶¶ 20, 27.  The prayer for relief includes a request
9    for injunctive relief for violation of California Civil Code §§ 2923.6, 2923.7, and 2924.10, as well as
10   "an injunction enjoining defendants and [their] agents from conducting further foreclosure activity in
11   particular, recording a Notice of Default, Notice of Trustee's Sale and/or conducting a Trustee's Sale of
12   the subject property."  Id. at 12.  Both parties agree that there is no impending foreclosure.  Remand
13   Motion at 2; Remand Opposition, Dkt. 14, at 5.

## II.  DISCUSSION

### A.    Legal Standard Governing Removal Jurisdiction

16        "Except as otherwise expressly provided by Act of Congress, any civil action brought in a State
17   court of which the district courts of the United States have original jurisdiction, may be removed by the
18   defendant or the defendants, to the district court of the United States for the district and division
19   embracing the place where such action is pending."  28 U.S.C. § 1441(a).  "If at any time before final
20   judgment[, however,] it appears that the district court lacks subject matter jurisdiction, the case shall be
21   remanded."  28 U.S.C. § 1447(c).

22        The right to remove a case to federal court is entirely a creature of statute.  See Libhart v. Santa
23   Monica Dairy Co., 592 F.2d 1062, 1064 (9th Cir. 1979).  The removal statute, 28 U.S.C. § 1441, allows
24   defendants to remove when a case originally filed in state court presents a federal question or is between
25   citizens of different states and involves an amount in controversy that exceeds $75,000.  See 28 U.S.C.
26   §§ 1441(a), (b); see also 28 U.S.C. §§ 1331, 1332(a).  Only state court actions that could originally have
27   been filed in federal court can be removed.  28 U.S.C. § 1441(a); see Caterpillar, Inc. v. Williams, 482
28   U.S. 386, 392 (1987); Ethridge v. Harbor House Restaurant, 861 F.2d 1389, 1393 (9th Cir. 1988).

Under 28 U.S.C. § 1332(a), "[t]he district courts . . . have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs, and is between . . . citizens of different states." 28 U.S.C. § 1332(a); see also Matheson v. Progressive Specialty Ins. Co., 319 F.3d 1089, 1090 (9th Cir. 2003) ("[J]urisdiction founded on [diversity] requires that the parties be in complete diversity and the amount in controversy exceed $75,000"). In any case where subject matter jurisdiction is premised on diversity, there must be complete diversity, i.e., all plaintiffs must have citizenship different than all defendants. See Strawbridge v. Curtis, 7 U.S. (3 Cranch) 267 (1806); see also Caterpillar, Inc. v. Lewis, 519 U.S. 61, 68 n. 3 (1996).

The Ninth Circuit "strictly construe[s] the removal statute against removal jurisdiction," and "[f]ederal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance." Gaus v. Miles, Inc., 980 F.2d 564, 566 (9th Cir. 1992) (citing Boggs v. Lewis, 863 F.2d 662, 663 (9th Cir. 1988); Takeda v. Northwestern Nat'l Life Ins. Co., 765 F.2d 815, 818 (9th Cir. 1985); and Libhart, 592 F.2d at 1064). "The 'strong presumption' against removal jurisdiction means that the defendant always has the burden of establishing that removal is proper." Id. (citing Nishimoto v. Federman-Bachrach & Assocs., 903 F.2d 709, 712 n. 3 (9th Cir. 1990); Emrich v. Touche Ross & Co., 846 F.2d 1190, 1195 (9th Cir. 1988)). Doubts as to removability must be resolved in favor of remanding the case to state court. Matheson, 319 F.3d at 1090.

### B.     Whether the Amount in Controversy Requirement is Satisfied

Plaintiff concedes that diversity exists but argues that the amount in controversy does not exceed the $75,000 jurisdictional minimum. Remand Motion at 2. Defendants argue the injunctive relief plaintiff requests brings the entire value of the Property into controversy. Because the Property was used to secure a loan in the amount of $349,000, FAC, ¶ 10, Exhibit A, defendants argue that this amount should approximate the value of the requested injunctive relief for the purposes of calculating the amount-in-controversy.

As defendants correctly note, "'[i]n actions seeking declaratory or injunctive relief, it is well established that the amount in controversy is measured by the value of the object of the litigation.'" Cohn v. Petsmart, Inc., 281 F.3d 837, 840 (9th Cir. 2002) (per curiam) (quoting Hunt v. Wash. State Apple Adver. Comm'n, 432 U.S. 333, 347 (1977)). Defendants accordingly cite various cases, such as

1    <u>Reyes v. Wells Fargo Bank, N.A.</u>, for the proposition that when "the primary purpose of a lawsuit is to

2    enjoin a bank from selling or transferring property, then the property is the object of the litigation." No.

3    C-10-01667 JCS, 2010 WL 2629785, at *4 (N.D. Cal. June 29, 2010).

4           Defendants' reliance upon these cases is misplaced, however, as the instant action is

5    distinguishable from <u>Reyes</u> and all others defendants cite in support of their contentions.  Specifically,

6    in <u>Reyes</u>, the subject property was sold in a non-judicial foreclosure auction after plaintiffs failed to

7    make their payments, defaulted on their loan, and received a Notice of Default. <u>Id.</u>, at *1.  <u>Cabriales v.</u>

8    <u>Aurora Loan Servs.</u>, upon which defendants also rely, involved a request to enjoin a "postponed" but

9    still pending foreclosure of the plaintiff's property, No. C 10-161 MEJ, 2010 WL 761081, at *3 (N.D.

10   Cal. Mar. 2, 2010). <u>See also Quiroga v. Bank of Am., N.A.</u>, No. EDCV 15-1163-MWF (Kkx), 2015 WL

11   4747978, at *4 (C.D. Cal. Aug. 10, 2015) (characterizing <u>Reyes</u>  and <u>Cabriales</u> as cases in which "the

12   property or loan was squarely the subject of the complaint").

13          Here, in contrast, plaintiffs do not allege that foreclosure proceedings have been initiated or

14   completed.  Although plaintiff's allegations are not entirely clear, they largely appear to be analogous

15   to those in <u>Quiroga</u>, in which the court found that the defendant failed to demonstrate that the amount

16   in controversy exceeded $75,000, despite plaintiff's request for an injunction preventing foreclosure.

17   Here, as in <u>Quiroga</u>, "[p]laintiff is not in default, there has not been a notice of default filed, there is no

18   pending foreclosure, and while the complaint mentions foreclosure, that is not its focus." <u>Id.</u> at *3; <u>see</u>

19   <u>also Ramirez v. JP Morgan Chase Bank, N.A.</u>, CV 15-05082 SJO (JPRx), 2015 WL 5470298, at *2

20   (C.D. Cal. Sept. 17, 2015) ("[T]he Court cannot use the value of Plaintiff's property because there is no

21   threat of foreclosure. Put another way, the property itself is not at issue in the litigation," <u>citing Steele</u>

22   <u>v. J.P. Morgan Chase Bank, N.A.</u>, No. EDCV 15-657 JGB (DTBx), 2015 WL 4272276, at *3 (C.D. Cal.

23   July 14, 2015)); <u>Vergara v. Wells Fargo Bank, N.A.</u>, No. SACV 15-00058-JLS, 2015 WL 1240421, at

24   *2 (C.D. Cal. Mar. 17, 2015) ("Courts have roundly rejected the argument that the amount in

25   controversy is the entire amount of the loan where a plaintiff seeks injunctive relief to enjoin a

26   foreclosure sale pending a loan modification"); <u>Vonderscher v. Green Tree Servicing</u>, No. 2:13-cv-

27   00490-MCE-EFB, 2013 WL 1858431, at *3 (E.D. Cal. May 2, 2013) (holding that the value of the loan

28   or property was not the "amount in controversy" and that the court accordingly lacked jurisdiction where

1   plaintiffs sought a loan modification but alleged they were not in default and therefore not subject to
2   foreclosure).

3          Defendants do not contest the allegation that they have not initiated foreclosure activities.
4   Rather, they place undue emphasis on the forms of plaintiff's requested relief-i.e., his request for an
5   injunction - and the fact that the FAC's prayer for relief requests, in addition to injunctive relief for
6   violation of the HBOR, "an injunction enjoining defendants and its agents from conducting further
7   foreclosure activity in particular, recording a Notice of Default, Notice of Trustee's Sale and/or
8   conducting a Trustee's Sale of the subject property."  FAC at 12.  Defendants argue that based on this
9   language, plaintiff intends to indefinitely prevent foreclosure of his property.

10          Reference to the FAC as a whole renders this interpretation unpersuasive.  All of the substantive
11  allegations of plaintiff's FAC indicate that he does not seek recession of the loan contract or a permanent
12  injunction against its enforcement, but rather seeks relief based on defendants' alleged mishandling of
13  his application for a loan modification. See Vergara, 2015 WL 1240421, at *2 n.1 ("While Vergara's
14  prayer for relief is arguably ambiguous on this point, there is no doubt that [temporary injunctive relief]
15  is the relief he seeks, as the Homeowner Bill of Rights does not authorize permanent injunctive relief,
16  but permits it only until the defendant 'show[s] that the material violation has been corrected and
17  remedied,'" quoting Cal. Civ.Code §§ 2924.12, 2924.19).

18          Accordingly, because plaintiff does not seek to rescind the loan, but rather seeks improvement
19  of defendants' loan modification application process and compensation for its alleged past shortcomings,
20  the amount in controversy is not properly gauged by the loan amount or the property value.  See
21  Mendoza v. Ocwen Loan Servicing, LLC, No. EDCV152281VAPDTBX, 2015 WL 9093559, at *3
22  (C.D. Cal. Dec. 15, 2015)("The holding in Reyes does not apply here, however, because Plaintiffs are
23  not seeking to invalidate the mortgage loan or to enjoin Defendant permanently from foreclosing.
24  Rather, Plaintiffs seek to enjoin Defendant from foreclosing until it complies with HBOR and issues a
25  final decision on their loan modification application"); Mott v. Wells Fargo Bank, N.A., No.
26  CV155783FMOAFMX, 2015 WL 5104776, at *2 (C.D. Cal. Aug. 31, 2015)("The court is not persuaded
27  that defendant has met its burden [of proving the amount in controversy exceeds $75,000].  As an initial
28  matter, a close reading of the Complaint discloses that plaintiff is not seeking to permanently enjoin the

foreclosure of his home. Instead, it appears that plaintiff is seeking a loan modification or, at a minimum, a review for a loan modification prior to any foreclosure"); see also Lenau v. Bank of Am., N.A., 131 F. Supp. 3d 1003 (E.D. Cal. 2015)("[H]ere Plaintiff seeks in part to delay foreclosure proceedings temporarily, pending a decision on his 'in-house' loan modification application. Further unlike Reyes, Plaintiff has not alleged his loan is in default, there has not been a notice of default filed, and there is no actual or pending foreclosure.  Thus, BANA has not provided authority supporting its assertion that the amount in controversy is properly gauged 'by the value of the Property and/or the amount of the mortgage debt at issue'").

Finally, Defendant argues that the complaint seeks damages of up to $70,000, and that assuming "a modest hourly rate of $250 per hour, Plaintiff's counsel would need to expend only 20 hours to exceed the $5,000 threshold."  Opposition at 4-5.  Alternatively, Defendant contends that even with a minor loan modification, reducing Plaintiff's interest rate from 6.25% to 5%, the reduction would total over $75,000 over the remaining term of the loan.  Opposition at 6 n.1.

"[H]owever, these arguments amount to nothing more than speculation." Johnson v. Wells Fargo Home Mortgage, No. CV 12-00144 GAF SPX, 2012 WL 1229880, at *4 (C.D. Cal. Apr. 11, 2012) ("Finally, Defendant argues that the complaint seeks general damages in excess of $25,000, and that Plaintiff's counsel is billing at a rate of $400 per hour, meaning that 'were this case to go to trial Plaintiff's counsel would be required to expend approximately 125 hours in preparation,' for a total of $50,000 in attorney's fees.  Alternatively, Defendant contends that even with a minor loan modification, reducing Plaintiff's monthly payment by $250 per month, that reduction would total $62,500 by the end of the remaining term of Plaintiff's loans. As in Soto, however, these arguments amount to nothing more than speculation," citing Soto v. Litton Loan Servicing, No. C 10-05099 MEJ, 2011 WL 724746, at *5 (N.D. Cal. Feb. 22, 2011)); Conrad Associates v. Hartford Acc. & Indem. Co., 994 F.Supp. 1196, 1198 (N.D.Cal.1998) ("A speculative argument regarding the potential value of the award is insufficient")).

Accordingly, Defendants have failed to show, by a preponderance of the evidence, that the amount in controversy exceeds $75,000.  The Court therefore concludes that it lacks subject matter jurisdiction under 28 U.S.C. § 1332(a).

**III. CONCLUSION**

For the reasons stated, the Court grants Cabanillas' motion to remand, and directs the clerk to remand the action forthwith to Los Angeles Superior Court.  The Court denies defendants' motion for judgment on the pleadings as moot..

DATED: April 20, 2016

CHRISTINA A. SNYDER
UNITED STATES DISTRICT JUDGE

8